IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW DZURYACHKO,**<br>**Plaintiff,**<br>v.<br>**TEVA PHARMACEUTICALS USA, INC.,**<br>**Defendant.** | **CIVIL ACTION NO. 20-5217** |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                                          **March 21, 2022**

Defendant Teva Pharmaceuticals USA, Inc. moves for summary judgment on all of Plaintiff Matthew Dzuryachko's claims concerning the termination of his employment as a Material Handler at a Teva distribution center.[1] Dzuryachko has asserted failure-to-accommodate and retaliation claims under the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA") and discrimination and retaliation claims under the Uniformed Services Employment and Reemployment Act ("USERRA") and Pennsylvania Military Affairs Act ("PMAA"). For the reasons outlined below, summary judgment will be granted as to the USERRA and PMAA claims and denied as to all other claims.

**I.  BACKGROUND[2]**

Dzuryachko began working for Teva as a Material Handler on December 17, 2018.[3] The distribution center where Dzuryachko worked operates 24 hours a day across three shifts, the

---

[1] *See* Def.'s Mot. Summ. J. [Doc. No. 20].

[2] These facts are drawn from the parties' Statement of Stipulated Undisputed Facts and the exhibits appended to the parties' filings. Where contested, the facts are viewed in the light most favorable to Plaintiff as the non-moving party.

[3] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 1, 3.

third of which begins at 10:30 PM and ends at 7:00 AM.[4] The role of a Material Handler is to move and stack products, package products, transport pallets of packages through the distribution center, and complete tasks related to storing and shipping products.[5] The official job description of a Material Handler identifies several essential duties and responsibilities of the position.[6] In relevant part, the stated qualifications for the Material Handler position specify:

> Regularly . . . stand up to 8.0 hrs. Frequently required to walk, climb stairs, stoop, kneel, bend, and or crouch. Frequently lift 50 lbs. and occasionally up to 60 lbs. (Requirement based on heaviest repack configuration for refrigerated repack cartons). Frequently exert up to 60 lbs. of force to push/pull objects or equipment within the distribution center.[7]

The precise duties vary and are assigned at the start of a shift.[8] Two of these assignments are "case pick," which requires the employee to lift packages and place them on conveyor belts, and "sorter," which requires the employee to move packages from a conveyor belt to a pallet.[9] After September 2019, Material Handlers were only assigned to the sorter role if they volunteered to work overtime.[10]

Around September 25, 2019, Dzuryachko gave the supervisor of the third shift, Robert Shipp, a note from his physiatrist, Dr. David Stolzenberg, which requested that Dzuryachko be limited to performing the sorter role one day per calendar week.[11]

---

[4] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 2, 4.

[5] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 1.

[6] *See* Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 8.

[7] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 9.

[8] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 10, 12, 14.

[9] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 15.

[10] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 16.

[11] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 5, 27.

Dzuryachko sought this note from his doctor because he had experienced back pain while working as a sorter during mandatory overtime between July and September 2019.[12] Shipp sent the note to Associate Director of Human Resources Patricia Larkin, who in turn provided it to WorkCare, a third-party company that assesses employees' requests for accommodations.[13] Larkin emailed Dzuryachko to alert him that WorkCare required information to assess his request.[14] A WorkCare physician later explained that WorkCare required additional detail about Dzuryachko's physical limitations that was not contained in the doctor's note.[15]

On January 27, 2020, Larkin emailed Dzuryachko to explain that, in order to consider his request for an accommodation, "[his] medical care provider's note must address the functional restrictions of your job and note specific physical restrictions/limitations."[16] In February, Dzuryachko provided a note from Dr. Stolzenberg stating that due to Dzuryachko's chronic back pain, he should be limited to working the sorter role once a week for no more than four hours at a time.[17] On February 7, 2020, a WorkCare physician notified Larkin that this note was still insufficient because it did not identify Dzuryachko's specific physical limitations.[18] The doctor provided Larkin a form

---

[12] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 17, 28.

[13] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 30–31.

[14] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 32.

[15] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 33.

[16] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 35.

[17] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 37.

[18] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 39.

with checkboxes to identify particular physical restrictions, which Larkin then forwarded to Dzuryachko.[19]

Dzuryachko returned the completed checkbox form and an accompanying note on February 12, 2020.[20] The form "indicated that he was limited to lifting or carrying items weighing 50 pounds or more to '1 time per 7 days, not more than 4 hours at a time,' and that he was limited to bending and stooping '1 time per 7 days, not more than 4 hours at a time.'"[21] A note in the margin stated "(sorter only –overtime)," and the accompanying note from Dr. Stolzenberg underscored that he was only recommending these restrictions for the sorter role.[22] Dr. Stolzenberg did not review the job description for the Material Handler position before making these recommendations.[23]

On March 12, 2020, Larkin informed the Material Handler shift supervisors that Dzuryachko could "only lift/carry items that are 50+ lbs 1 time per each 7 calendar days for only 4 hours during that time," and that he could only "conduct heavy bending/stooping (defined as 10+ times in a given hour) activity 1 time per each 7 calendar days for up to 4 hours during that time."[24] Shipp, the third shift supervisor, and Greg Hofmann, the Associate Director of Distribution, analyzed the Material Handler tasks they believed Dzuryachko could perform in light of these restrictions.[25] After Shipp

---

[19] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 39–40.
[20] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 43.
[21] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 43.
[22] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 43–44.
[23] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 74.
[24] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 45.
[25] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 48.

and Hofmann determined that Dzuryachko could only perform five Material Handler duties, Teva decided to terminate Dzuryachko's employment.[26] Dzuryachko's termination became effective on May 28, 2020.[27]

Before and after his termination, Dzuryachko served in the National Guard.[28] Dzuryachko took military leave multiple times during his employment at Teva, and Teva compensated him for time that he took off to complete his service.[29] Dzuryachko was on military leave when he received his termination letter.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[31] When "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a "genuine" dispute over material facts.[32] To evaluate a motion for summary judgment, it is necessary to "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[33] It is improper for a court "to weigh the evidence or make credibility

---

[26] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 48–49.

[27] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 53.

[28] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 25, 54.

[29] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 58–61.

[30] Fed. R. Civ. P. 56(a).

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)..

[32] *Id.*

[33] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

determinations" as "these tasks are left to the fact-finder."[34] The non-moving party must support its opposition to the motion by pointing to evidence in the record.[35] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[36]

### III. DISCUSSION

#### A. ADA and PHRA Failure-to-Accommodate Claims

The ADA bars employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees."[37] The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or a situation where one is "regarded as having such an impairment."[38] A prima facie case of discrimination under the ADA requires a plaintiff to "show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination."[39] The failure to make a reasonable accommodation constitutes discrimination "unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business."[40]

---

[34] *Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d 1998).

[35] *Celotex Corp v. Catrett*, 477 U.S. 317, 322–23 (1986).

[36] *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

[37] 42 U.S.C. § 12112(a).

[38] *Id.* § 12102(1). Under the PHRA, a disability includes "a physical or mental impairment which substantially limits one of more of such person's major life activities." 43 P.S. § 954(p.1)(1).

[39] *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (citation omitted). The ADA and the PHRA "are . . . to be interpreted consistently, and that all have the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (citations omitted).

[40] § 12112(b)(5)(A).

1. *A Material Factual Disputes Exist as to Whether Dzuryachko can Demonstrate a Prima Facie Case of Discrimination*

Teva first argues that Dzuryachko has failed to make out a prima facie case of discrimination under the ADA and the PHRA because the record does not show that his impairment substantially limited a major life activity.[41] As amended in 2009, the ADA includes "manual tasks, . . . lifting, [and] bending" as "major life activities."[42] Further, "[t]he definition of disability . . . shall be construed in favor of broad coverage."[43] Indeed, evaluating "whether an impairment substantially limits a major life activity requires an individualized assessment."[44] Typically "[t]he question of whether an individual is substantially limited in a major life activity is a question of fact."[45]

A plaintiff also may satisfy the first element of the prima facie case by establishing that an employer regarded plaintiff as disabled "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."[46] This does "not apply to impairments that are transitory and minor."[47] To prevail, "the plaintiff must demonstrate that the employer believed that a wholly unimpaired plaintiff had an

---

[41] Mot. Summ. J. [Doc. No. 20] at 2.

[42] 42 U.S.C. § 12102(2)(A).

[43] *Id.* § 12102(4)(A).

[44] *Mills v. Temple Univ.*, 869 F. Supp. 2d 609, 620–21 (E.D. Pa. 2012) (quoting *Cohen v. CHLN*, Inc., No. 10–514, 2011 WL 2713737, at *7 (E.D. Pa. July 13, 2011)).

[45] *Williams v. Phila. Housing. Auth. Police Dept.*, 380 F.3d 751, 763 (3d. Cir. 2004), *superseded by statute on other grounds as stated in Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 187–89 & n.30 (3d Cir. 2019).

[46] 42 U.S.C. § 12102(3)(A).

[47] *Id.* § 12102(3)(B).

impairment that substantially limited at least one major life activity or that the employer believed an employee's actual impairment to limit major life activities when it in fact did not."[48]

Dzuryachko contends that his back conditions substantially impacted his ability to stoop, bend, and lift, as well as activities that included standing, walking, and prolonged sitting.[49] Based on the record, a reasonable factfinder could find either that Dzuryachko's conditions substantially impacted any major life activity or that Teva regarded him as disabled and terminated his employment as a result.[50] In their respective depositions, Dzuryachko testified that his back conditions preceded his employment at Teva, and Dr. Stolzenberg stated that as of December 2018, it appeared that Dzuryachko's conditions were permanent.[51] Further, Teva terminated Dzuryachko after Shipp and Hofmann determined that his perceived physical limitations would not allow him to do his job.[52] Accordingly, a reasonable factfinder could determine that Dzuryachko's conditions were not transitory or minor, and that Teva regarded Dzuryachko as having an impairment that substantially limited a major life activity.

In the alternative, Teva argues that Dzuryachko was not "qualified to perform the essential functions of the job, with or without reasonable accommodations."[53] The Third Circuit has recognized that "whether a particular function is essential 'is a factual determination that

---

[48] *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d. Cir. 2012) (citation omitted).

[49] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. [Doc. No. 23] at 13.

[50] As a factfinder could determine that Plaintiff satisfies either of these criteria for establishing a disability under the ADA, the Court does not reach the parties' arguments concerning whether Plaintiff could demonstrate that he had "a record of such an impairment." *See* 42 U.S.C. § 12102(1)(B); Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. [Doc. No. 23] at 16; Def.'s Reply Supp. Mot. Summ. J. [Doc. No. 25] at 12–13.

[51] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. D Pl.'s Dep. [Doc. No. 23-3] at ECF pages 86–87; Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. T [Doc. No. 23-3] at ECF pages 58–59.

[52] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶¶ 48–49.

[53] Def.'s Mot. Summ. J. [Doc. No. 20] at 3.

must be made on a case by case basis [based upon] *all* relevant evidence.'"[54] Essential functions are "fundamental job duties of the employment position."[55] To determine whether a task is an essential function, a court may consider factors such as the employer's judgment, written job descriptions, the amount of time dedicated to the task, and the ramifications of allowing an employee not to do a task.[56]

Dzuryachko testified during his deposition that he was able to perform most of the tasks required of a Material Handler, and that he did so with the assistance of machines.[57] Further, the parties agree that Material Handlers working on the third shift, like Dzuryachko, were not required to work the sorter role after September 2019.[58] Dzuryachko's position, that his back conditions did not prohibit him from performing the essential functions of his job, conflicts with the assessment Hofmann and Shipp performed, which concluded that Dzuryachko's limitations prevented him from performing most duties.[59] Material factual disputes exist over the essential functions of the Material Handler position and the physical abilities needed to perform them, with or without accommodation.

---

[54] *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 148 (3d. Cir. 1998) (citation omitted).

[55] 29 C.F.R. § 1630.2(n)(1).

[56] *Id.* § 1630.2(n)(3).

[57] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. D [Doc. No. 23-3] at ECF pages 55, 59–60, 69. Affidavits from a current and former Material Handler also discuss the range of assignments available to Material Handlers, and both note that that the sorter position was physically demanding. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. L [Doc. No. 23-3]; Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. M. [Doc. No. 23-3]. Plaintiff has provided examples of machines Material Handlers used in the course of their work, including the Walkie/Ridie, LTX, and FLT. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. K [Doc. No. 23-3].

[58] Statement of Stipulated Undisputed Facts [Doc No. 20-1] ¶ 16.

[59] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. BBB [Doc. No. 23-5].

2. *A Material Factual Dispute Exists Over Whether Teva Failed to Accommodate Dzuryachko*

Teva further argues that Dzuryachko did not suffer an adverse employment action for a failure to accommodate a disability. The Third Circuit has held that "[a] plaintiff bringing an ADA failure-to-accommodate claim must establish: '(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated.'"[60] Under the ADA, "a failure to make a reasonable accommodation for a disabled and qualified employee constitutes discrimination."[61] However, if the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business," the employer will not be liable for a failure to accommodate.[62]

Defendant first argues that Plaintiff cannot make out a failure-to-accommodate claim because he does not have a disability. As discussed above, a material factual dispute exists as to whether Dzuryachko has a disability under the ADA. With respect to the second element of this claim, a reasonable factfinder could determine that Dzuryachko requested an accommodation.[63] A request for an accommodation does not need to be in writing "or formally invoke the magic words 'reasonable accommodation,'" but "the notice nonetheless must make clear that the employee wants assistance for his or her disability."[64] Dzuryachko provided a doctor's note to Shipp in September 2019 requesting a limitation on how often he could perform the essential

---

[60] *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (citations omitted).

[61] *Williams*, 380 F.3d 751 at 771 (citation omitted).

[62] 42 U.S.C. § 12112(5)(A).

[63] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. Z [Doc. No. 23-3] at ECF pages 376–77.

[64] *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999).

10

functions of the sorter role each week, and an accompanying email from Shipp states that Dzuryachko said was experiencing "physical body problems."[65] At this stage, a jury could determine that the record supports Dzuryachko's contention that he requested an accommodation.

Teva further argues that it made a good faith effort to assist Dzuryachko. An employer is required "to engage in an 'interactive process' of communication with [the employee] so that the employer will be able to . . . assist in identifying reasonable accommodations where appropriate."[66] "This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could overcome those limitations."[67] Both parties "have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith" during the interactive process.[68] Although an employer's failure to engage in such a process does not, by itself, support a distinct claim, it "supports a finding that the employer did not make a good faith effort to assist the employee in identifying reasonable accommodations."[69]

A plaintiff demonstrates that an employer failed to engage in the interactive process by showing that:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and

---

[65] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. Z [Doc. No. 23-3] at ECF pages 376–77.

[66] *Williams*, 380 F.3d 751 at 771 (citation omitted).

[67] *Taylor*, 184 F.3d at 311 (citing 29 C.F.R. § 1630.2(o)(3)).

[68] *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 330 (3d Cir. 2003).

[69] *Watson v. Drexel Univ.*, No. 19-1027, 2020 WL 5763587, at *5 (E.D. Pa. Sept. 28, 2020) (citing *Taylor*, 184 F.3d at 325); and then citing *Whelan v. Teledyne Metalworking Prod.*, 226 F. App'x 141, 147 (3d Cir. 2007)).

>  4) the employee could have been reasonably accommodated but for the employer's lack of good faith.[70]

Here, it took several months for Teva to process Dzuryachko's request for an accommodation and to inform him of issues with the initial doctor's notes he submitted to WorkCare.[71] The Third Circuit has noted that "[a] party that obstructs or delays the interactive process is not acting in good faith."[72] Additionally, after Dzuryachko submitted a checkbox form that identified his physical limitations in February 2020, he did not hear anything from Teva or WorkCare about his request until he was terminated three months later on May 28, 2020.[73] On this basis, a reasonable factfinder could determine that Teva did not engage in the interactive process in good faith.

Defendant further contends that Dzuryachko's requested accommodation would not allow him to perform the essential functions of the Material Handler position and was therefore unreasonable.[74] As discussed previously, there is a material factual dispute as to the functions that were essential to the Material Handler role and whether Dzuryachko could perform them

---

[70] *Conneen*, 334 F.3d at 330–31 (citing *Taylor*, 184 F.3d at 319–20).

[71] After Dzuryachko submitted his initial doctor's note in September 2019, he was not told that he would need to obtain his medical records until December 2019. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. GG [Doc. No. 23-4] at ECF pages 17–18. Dzuryachko provided medical records within two days, but he did not hear anything until the end of January when Larkin denied his request and asked for a note that identified his specific physical limitations. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. II [Doc. No. 23-4] at ECF page 26. After Dzuryachko submitted another note in early February, Larkin provided a form with checkboxes for Dr. Stolzenberg to fill out. Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. NN [Doc. No. 23-4] at ECF pages 38–40. Dzuryachko provided the form to WorkCare on February 19, 2020.

[72] *Taylor*, 184 F.3d at 312 (quoting *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996)).

[73] *See* Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. TT [Doc. No. 23-4] at ECF pages 54–56; Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. UU [Doc. No. 23-4] at ECF page 58.

[74] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. Z [Doc. No. 23-3] at ECF pages 376–77.

with or without an accommodation. Summary judgment on Plaintiff's failure-to-accommodate claim will be denied.[75]

### B. ADA and PHRA Retaliation Claims

Teva next seeks summary judgment on Dzuryachko's retaliation claims. The ADA prohibits retaliation against an employee who requests an accommodation.[76] A retaliation claim is actionable if "the plaintiff has a 'reasonable, good faith belief that [he] was entitled to request the reasonable accommodation [he] requested.'"[77] A prima facie ADA retaliation claim requires the plaintiff to demonstrate: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[78]

The record shows that Dzuryachko requested an accommodation due to a physical condition, which is a protected activity if done in good faith.[79] He was fired, which constitutes an adverse action. There is evidence of a causal connection between the termination and the request for accommodation (the dispute being whether it was the request or whether Plaintiff could not perform his job). One of the Teva employees who concluded that Dzuryachko could not perform most of his job duties, third shift supervisor Robert Shipp, noted that Material Handlers "need to physically be 100%" when Dzuryachko first requested an accommodation.[80] A reasonable

---

[75] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. GGG [Doc. No. 23-5] and ECF page 58.

[76] *Sulima*, 602 F.3d at 188 (citation omitted).

[77] *Id.* (quoting *Williams*, 380 F.3d at 759 n.2.).

[78] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

[79] *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).

[80] *See* Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. Ex. AA [Doc. No. 23-4] at ECF page 2.

factfinder could link Dzuryachko's requests for an accommodation with his termination. Accordingly, Dzuryachko has established a prima facie case of retaliation under the ADA.

If an employee establishes a prima facie case of retaliation under the ADA, "the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action."[81] The employer's burden is "relatively light," and if met, the burden shifts back to the plaintiff to identify "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious [retaliatory] reason was more likely than not a . . . determinative cause of the employer's action."[82]

Teva contends that it terminated Dzuryachko's employment for a legitimate, non-pretextual reason, namely that he was unable "to lift or carry 50 pounds or more and bend or stoop more than four hours at a time per seven days, which are essential to the Material Handler job."[83] Teva has met its burden, but Plaintiff has produced evidence that might cause a factfinder to disbelieve Teva's motivation for terminating Dzuryachko's employment. A reasonable factfinder could determine that Teva improperly expanded the scope of the restrictions requested in Dr. Stolzenberg's February 2020 letter and checkbox form. Additionally, Dzuryachko's shift supervisor initially demonstrated reluctance toward granting any accommodation. Accordingly, Teva's motion for summary judgment on the ADA and PHRA retaliation claims will be denied.

---

[81] *Shellenberger*, 318 F.3d at 187 (citation omitted).

[82] *Fuentes v. Perskie*, 32 F.3d 759, 763–64 (3d Cir. 1994).

[83] Def.'s Reply Supp. Mot. Summ. J. [Doc. No. 25] at 17.

### C. USERRA and PMAA Claims

Teva seeks summary judgment on Plaintiff's claims under the USERRA and the PMAA.[84] These statutes "prohibit employment discrimination on the basis of membership in, or the obligation to perform service in, the military."[85] Specifically, the USERRA provides that:

> A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.[86]

If an employee's service is a "motivating factor in the employer's action," the employer has violated the USERRA "unless the employer can prove that the action would have been taken in the absence of such . . . service."[87]

At the outset, the plaintiff must demonstrate that the "employee's military service was a substantial or motivating factor in the adverse employment action."[88] If the plaintiff succeeds, "the burden of proof then shifts to the employer, who must prove that it would have taken the adverse action for non-discriminatory reasons, regardless of the employee's military service."[89] Accordingly, "summary judgment for the employer is

---

[84] As the Third Circuit has analyzed the PMAA under the same framework as the USERRA, the Court applies an identical analysis to both claims and will not assess the PMAA separately. *See Murphy v. Radnor Twp.*, 542 F. App'x 173, 180 (3d Cir. 2013) [Hereinafter *Murphy I*].

[85] *Murphy v. Radnor Twp II*, 604 F. App'x 175, 178 (3d Cir. 2015) [Hereinafter *Murphy II*].

[86] 38 U.S.C. § 4311(a).

[87] *Id.* § 4311(c)(1).

[88] *Murphy I*, 542 F. App'x at 176 (quoting *Sheehan v. Dep't of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)). A motivating factor "is one of the factors that a truthful employer would list if asked for the reasons for its decision." *Id.* at 177 (quoting *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238 (11th Cir. 2005)).

[89] *Id.* (citing *Sheehan*, 240 F.3d at 1013).

appropriate if the employer can produce uncontested evidence that it would have taken the adverse employment action even in the absence of an improper motive."[90] A court may consider multiple factors when determining whether a defendant acted with a discriminatory motive, including (1) "proximity in time between the employee's military activity and the adverse employment action," (2) "inconsistencies between the proffered reason and other actions of the employer," (3) "an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity," and (4) "disparate treatment of certain employees compared to other employees with similar work records or offenses."[91]

Here, Dzuryachko received his termination letter while serving in the National Guard. Plaintiff contends that "[t]he timing is unusually suggestive and alone warrants a jury trial."[92] Drawing all inferences in Plaintiff's favor, the timing of the termination suggests that his military service was a "motivating factor" in Teva's decision to fire him.

The burden shifts to Teva to demonstrate that it would have terminated Dzuryachko regardless of whether it possessed a discriminatory motive regarding his military service. The record shows that Larkin, the Associate Director of Human Resources, instructed the shift supervisors to accommodate Dzuryachko's physical limitations, as Teva construed them based on the form Dr. Stolzenberg completed, on March 12, 2020.[93] Dzuryachko's leave related to his service in the National Guard began

---

[90] *Id.* (citations omitted).

[91] *Id.* (citing *Sheehan*, 240 F.3d at 1014).

[92] Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. [Doc. No. 23] at 29.

[93] Pl.'s Memo Law Opp'n Mot. Summ. J. Ex. ZZ [Doc. No. 23-4] at ECF page 69.

on April 18, 2020.[94] Two days later, Hofmann sent an email to Larkin concluding that Dzuryachko could not perform most Material Handler assignments and that granting an accommodation would adversely impact distribution center operations.[95] On May 3, 2020, Dzuryachko informed Teva that his orders were being extended through May 31, 2020.[96] Teva informed Dzuryachko of his termination by letter dated May 28, 2020.[97]

      Even if Dzuryachko's military leave were a motivating factor in Teva's decision to fire him, the record establishes that Teva still would have terminated his employment based on the question of whether Plaintiff could physically perform his job. Larkin directed Dzuryachko's shift supervisors to accommodate Dzuryachko's physical limitations a month before Dzuryachko gave notice that he would need to take military leave. An email from Dzuryachko's primary supervisor illustrates that he was concerned about Dzuryachko's physical abilities beginning in September 2019. Moreover, Hofmann notified Larkin that he did not believe Teva could accommodate Dzuryachko's limitations about two weeks before Dzuryachko informed Teva that his orders had been extended. Here, there is no evidence that Dzuryachko's military service factored into the decision. As a reasonable factfinder could not find that Teva would not have terminated Dzuryachko but for his military service, the Court will grant summary judgment to Teva on Dzuryachko's PMAA and USERRA claims.

---

[94] Pl.'s Memo Law Opp'n Mot. Summ. J. Ex. DDD [Doc. No. 23-5] at ECF page 45.

[95] Pl.'s Memo Law Opp'n Mot. Summ. J. Ex. BBB [Doc. No. 23-5] at ECF page 41.

[96] Pl.'s Memo Law Opp'n Mot. Summ. J. Ex. EEE [Doc. No. 23-5] at ECF pages 47–48.

[97] Pl.'s Memo Law Opp'n Mot. Summ. J. Ex. GGG [Doc. No. 23-5] at ECF page 58.

IV. CONCLUSION

Disputed issues of material fact preclude summary judgment on Dzuryachko's ADA and PHRA discrimination and retaliation claims. As Plaintiff cannot show that his service in the National Guard was the "but for" cause of his termination, summary judgment will be granted on the USERRA and PMAA claims. An order will be entered.